**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
|   | ) |
| | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Criminal No.  21-10160-IT |
| | ) |
| CHANG GOO YOON, | ) |
| | ) |
| Defendant | ) |
| | ) |
|   | ) |

**GOVERNMENT'S TRIAL BRIEF**

The United States respectfully submits this trial brief to identify issues relevant to the trial scheduled to begin on January 8, 2024 in the above-captioned manner.

## I.  THE INDICTMENT AND A SUMMARY OF THE CASE

The defendant, Chang Goo Yoon ("Yoon"), was a physical therapist and resident of Waltham, Massachusetts and was the owner of several physical therapy clinics located in Allston, Brookline, and Waltham, Massachusetts.   Dkt. 1, Indictment at ¶ 1.  From November 2014 through November 2018, Yoon submitted false bills to health insurance companies, Blue Cross Blue Shield, Aetna, and MAPFRE for physical therapy session that did not occur.  Specifically, Yoon billed approximately $159,225 in claims for physical therapy that listed Yoon as the servicing provider on dates when Yoon out-of-state in South Korea, Los Angeles, and Toronto.  Yoon also submitted approximately $64,415 in claims for physical therapy he purportedly provided to patients on dates when those patients were traveling abroad. Yoon submitted approximately $52,596 in claims for physical therapy he supposedly provided on dates of service when Yoon was gambling at casinos, including the Golden Nugget, MGH Springfield, Tiverton Casino, and Twin River Casino. Dkt. 1 at ¶ 6(b)-(c).

Between August 2016 and August 2017, YOON defrauded MAPFRE by submitting false and fraudulent personal injury protection ("PIP") claims for physical therapy sessions that never took place. Specifically, Yoon billed for approximately $30,000 in claims to MAPFRE after he was involved in three separate car accidents. For each car accident, YOON submitted physical therapy claims that purported to be related to the car accident. The majority of YOON's PIP physical therapy claims listed YOON's then-employee, Miron Kwon, as the servicing provider. YOON entered Kwon's name and National Provider Identifier "NPI" number on claim forms submitted to MAPFRE and submitted notes and reports with Kwon's signature even though Kwon never provided YOON any physical therapy treatment and never gave him authority to use her name or NPI number for his PIP claims. On certain dates of service, YOON was traveling overseas and could not have received physical therapy services from Kwon. After Kwon left YOON's practice, YOON listed himself as both the patient and the servicing provider for the remainder of YOON's PIP physical therapy claims. Dkt. 1 at ¶¶7-8.

## II.  WITNESSES AND EVIDENCE

The following is description of witnesses the government anticipates calling at trial, the anticipated topics of their testimony, and exhibits and categories of exhibits that the government anticipates introducing through these witnesses. Contemporaneously with the filing of this brief, the government will file its witness and exhibit lists.

### Witnesses the Government Anticipates Calling at Trial

#### A.  Yoon's Former Patients

The government anticipates calling 5-8 former patients of Yoon. The government anticipates these witnesses will testify concerning the following subjects:

- Their medical conditions and the treatment they received from Yoon and other providers;

- The dates, frequency, number, and type of treatments they received (and did not receive) as compared to the claims submitted and patient notes prepared by Yoon;

- Periods of time that these patients were outside of Massachusetts or outside of the United States—corresponding with dates for which Yoon submitted claims for reimbursement physical therapy sessions.

The government anticipates introducing the following documents or categories of documents through these patient-witnesses:

- Calendars or other records showing appointment dates;

- Text  messages with Yoon about appointment scheduling;

- Records showing travel outside the United States or outside Massachusetts; and

- Sign in sheets reflecting their signatures.

B.      *Health Care Benefit Program Employees / Representatives*

The government anticipates calling employees from the following health insurance providers: (i) Blue Cross Blue Shield; (ii) Aetna; and (iii) MAPFRE.  The government anticipates that these witnesses will testify concerning the following subjects:

- General background on their employer's business, including the processes through which health care providers like Yoon submit claims for reimbursement, the information contained in such claims, the health insurer's process for evaluating and providing reimbursement for claims; and the processes suspending payment or initiating pre-payment review ;

- The use of CPT codes to identify the medical procedures performed by health care providers;

- The circumstances under which the health insurers would—and would not—pay for services billed under various CPT codes used in claims submitted by or on behalf of Yoon; and

- Health insurance records concerning claims submitted by, or on behalf of, Yoon for physical therapy – including records reflecting claims for treatments purportedly provided to the patients

The government anticipates introducing the following documents or categories of documents through these health insurer employees:

- Records of claims data submitted by, or on behalf of, Yoon for physical therapy treatment to their health insurer—including records reflecting claims for treatment not rendered;

- Explanation of Benefit forms; etc.

3

- Health care provider agreements executed by the health insurers and Yoon;

- Internal investigations and interviews conducted by the health insurance providers; and

- Correspondence concerning stop payments, medical records requests sent by insurers to Yoon, and patient records and claims submitted by Yoon.

C.     *Former-Employees of Yoon's Physical Therapy Clinics*

The government anticipates calling individuals formerly employed at physical therapy clinics owned or operated by Yoon including physical therapist Miran Kwon, unlicensed physical therapy aide, Sungho Yoon, and several former receptionists.  The government anticipates these witnesses will testify concerning the following subjects:

- Their hiring and employment at Yoon's clinics;

- The set-up of the clinics;

- Yoon's in-office schedule;

- Yoon's billing practices;

- Calendars and appointment schedules maintained at Yoon's clinics;

- Yoon's request that employees lend him money and / or cash checks from insurers to Yoon after Yoon was unable to cash checks due to closed bank accounts.

The government anticipates introducing the following documents or categories of documents through these patient-witnesses:

- Emails, texts and other communications with Yoon;

- Bank records related to Yoon and the physical therapy clinics;

- Falsified medical records and claims.

D.     *Law Enforcement Witnesses*

The government anticipates calling law enforcement agent witnesses who will testify about:

- Insurance claims data obtained by health insurers and from health insurers;

4

- Documents and things obtained by search warrant and consent search of Yoon's clinics;

- Comparisons of information in false medical records and bills produced by Yoon with information reflected in (i) data produced by insurers, (ii) border crossing records, (iii) travel records, and (iv) claims data from insurers;

- Bank records of accounts belonging to Yoon and his clinics; and

- Casino records.

During the direct testimony of the law enforcement witnesses, the government anticipates introducing summary charts reflecting the contents of the records and data described immediately above.

### E.    Employee(s) of Casinos

The government may call individuals employed by the three casinos identified in the Indictment to testify about casino records.

### F.    Keepers of Record

The government and the defendant continue to discuss stipulations concerning the authenticity and admissibility of certain records obtained from the health care benefit programs identified in the Indictment (Aetna, BCBS, MAPFRE), Bank Records, Casino Records, Insurer Records, Medicare Records, Colorado Medicaid Records.  In the event that the parties are unable to reach a stipulation on these matters, the government may call keepers of records from these organizations to testify regarding the authenticity and admissibility of documents that have been produced to the government during its investigation.

## III.    STIPULATIONS

As noted above, the government and the defendant have discussed stipulations concerning the authenticity and admissibility of documentary evidence.  In an attempt to reduce the number of witnesses required and to streamline the presentation of evidence, the government has also proposed to the defendant a number of additional stipulations concerning various factual matters.  In the event that the parties agree to any stipulations, the parties will promptly file them with the Court.

## IV.    ANTICIPATED EVIDENTIARY ISSUES

### A.    Summaries of Voluminous Documents

Federal Rule of Evidence 1006 allows the "contents of voluminous writings . . . which cannot conveniently be examined in court [to] be presented in the form of a chart, summary, or calculation." Fed. R. Evid. 1006.  The government anticipates introducing into evidence summaries of:  (i) claims data from health care benefit programs to which Yoon submitted claims and from which he received reimbursement; (ii) data obtained from the casinos described above; (iii) medical records from Yoon's clinics.  As required by Federal Rule of Evidence 1006, the government has produced the underlying records to the defendant and the records will be available for the Court at trial.  The government may also independently introduce them into evidence at trial.

Charts are appropriately introduced as a "pedagogical device" to "clarify and simplify complex testimony or other information and evidence or to assist counsel in the presentation of argument to the court or to the jury" and may be introduced into evidence under Rule 611 if they are "sufficiently accurate and reliable."  *United States v. Milkiewicz*, 470 F.3d 390, 398 (1st Cir. 2006).  Here, the relevant charts and summaries will be presented in a comprehensible, accurate, and concise form and will assist the jury in understanding the government's presentation.

### B.    Demonstrative Charts

In addition to summary charts that it will seek to introduce into evidence, the government may also use demonstrative charts during its opening statement, examination of witnesses, and in closing argument.  Such charts may include, for example, charts comparing testimony and evidence introduced through different witnesses concerning the number, frequency, and type of treatments provided by Yoon to his patients and diagrams showing the flow of proceeds from the fraudulent scheme. The government does not intend to offer these charts into evidence. Courts have repeatedly allowed use of charts similar to those the United States intends to use in this case. *See, e.g., United States v. Scales*, 594 F.2d 558,

6

561-562 (6th Cir. 1979) (summary of indictment); *United States v. Stephens*, 779 F.2d 232, 238 (5th Cir. 1985) (simple flow charts tracing the defendant's use of loan proceeds).

C.      *Introduction of Business Records & Public Records*

The government intends to introduce business records—specifically, bank account records, under Federal Rules of Evidence 803(6) and 902(11) and anticipates filing stipulations concerning the same. As required by Federal Rule of Evidence 902(11), the government provided counsel for the defendant with copies of these records.

The government also intends to introduce certain public records, including border crossing records, under Federal Rules of Evidence 803(8) and 803(14). Rule 803(8) provides an exception to the hearsay rule for public records from a public agency or office, relating to an activity of the office. "Records kept … [b]y public agencies may be admissible under the business records exception, Fed. R. Evid. 803(6), as well as under the public records exception, Fed. R. Evid. 803(8)." *United States v. Bohrer*, 807 F.2d 159, 162 (10th Cir. 1986) (internal citations omitted).  Federal Rule of Evidence 803(14) separately provides an exception to the hearsay rule for public records that "purport[] to establish or affect an interest in property."

D.      *Lay Testimony Concerning Claims Processing, CPT Codes, Stop Payments, Pre-payment Review*

The government anticipates soliciting testimony from health insurer witnesses concerning CPT codes relating to physical therapy treatments, claims processing, stop payment, and pre-payment review. These witnesses will testify concerning the circumstances under which the health care benefit program for which they work approves or denies claims identifying certain CPT codes and what information is material to the health insurer's decision to approve payment for those claims.  This testimony is based on these witnesses' personal observations, their experience working for the specific health insurer, and their participation in the day-to-day operations of their respective health insurers.  Such testimony is

7

admissible under Federal Rule of Evidence 701 because it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701.

E.     *Calendar Entries*

The government anticipates that it may seek to introduce into evidence calendar entries of two distinct types. First, the government may introduce entries recorded in calendars kept by Yoon's patients showing scheduled appointments. These entries are not excludable hearsay statements, but instead reflect "the declarant's then existing state of mind . . . such as intent"—that is an intent to attend the future appointments—and so are "not excluded by the hearsay rule." Fed. R. Evid. 803(3). *See also, e.g., United States v. Best*, 219 F.3d 192, 198 (2d Cir. 2000) ("A declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds. … If relevant, such a statement may be introduced to prove that the declarant thereafter acted in accordance with the stated intent."); *Mutual Life Insurance Co. v. Hillmon*, 145 U.S. 285, 295-96 (1892); Fed. R. Evid. 803 Advisory Committee Note to Paragraph (3) (1972) ("The rule of *Mutual Life Ins. Co. v. Hillmon* . . . allowing evidence of intention as tending to prove the doing of the act intended, is . . . left undisturbed."); *United States v. Houlihan*, 871 F. Supp. 1495 (D. Mass. 1994).

F.     *404(b) Evidence*

The government provided notice to Yoon that it intended to introduce, pursuant to Federal Rule of Evidence 404(b), evidence concerning:

> (i) Yoon's loss of his Colorado physical therapy license and exclusion by the U.S. Department of Health and Human Services from participating in Medicare, Medicaid, and all other federal health care programs;
>
> (ii) Yoon's doctoring of checks from Wellfleet Insurance in an effort to obtain duplicate payments; and

(iii) Yoon's submission of fraudulent physical therapy claims to the Korean National Health Insurance on behalf of Sungho Yoon for appointments that did not take place.

*See* 10/20/23 Government 404(b) Notice.  The government filed a motion in limine seeking the admission of Yoon's loss of his Colorado physical therapy license and his exclusion from Medicare / Medicaid, and Yoon filed his own motion seeking to exclude that evidence.  *See* Dkt. 77 (Govt's Motion to Admit); Dkt. 76 (Defendant's Motion in Limine at 2-3).  The government also briefed the issues concerning the doctoring of checks from Wellfleet Insurance and the fraudulent claims to the Korean National Health Insurance plan in its opposition to Yoon's Motion in Limine to exclude evidence on these two matters.  *See* Dkt. 80 (Govt's Opposition to Defendant's Motion to Exclude Motion to Admit); Dkt. 76 (Defendant's Motion in Limine to Exclude Evidence at 2-3).

      G.    *Evidence of Motive and Use of Funds Obtained via Yoon's Fraud Scheme*

The government also provided notice through its exhibits and discussions with defense counsel that it intends to introduce evidence of Yoon's gambling and financial condition to show (a) where he was on dates when he claimed to have provided physical therapy treatments to patients, and (b) a motive to commit fraud.  *See United States v. Morant*, 98 F. App'x 560, 654 (7th Cir.2004) (holding that the defendant's gambling losses were admissible to establish his motive to commit robberies); *United States v. Ray*, 2015 WL 5038108, at *2 (N.D. Ind. Aug. 25, 2015) (rejecting motion to exclude evidence of defendant's gambling in wire fraud / embezzlement case under Rule 404(b); "As to all of the charges [which include wire fraud], Defendant's gambling activities provided a strong motive for her to engage in each of the charged offenses, through which she would have received a financial benefit that could be used for gambling.") *United States v. Mobley*, 193 F.3d 492, 495 (7th Cir.1999) (holding that the defendants' expenditures were admissible to show their motive to steal from their employer); *United States v. Ellington*, No. 07 CR 846, 2009 WL 1309525, at *7 (N.D.Ill. May 11, 2009) ("Evidence of gambling has been found to be admissible under Rule 404(b) when the question of cash flow is relevant

to the defendant's motive."); *United States v. Ray*, 2015 WL 5038108, at *2 (N.D. Ind. Aug. 25, 2015) ("As to all of the charges [which include wire fraud], Defendant's gambling activities provided a strong motive for her to engage in each of the charged offenses, through which she would have received a financial benefit that could be used for gambling.")

## V.      SPECIAL COURTROOM ARRANGEMENTS

a.      *Paralegal*.  The government respectfully requests that, in addition to trial counsel, the Court allow Bridget McDonnell, a legal assistant with the United States Attorney's Office, to sit at counsel table.  Ms. McDonnell is an integral member of the prosecution team and will assist counsel in presenting the government's evidence through the courtroom technology system.

b.      *Electronic Presentation of Evidence & Use of PowerPoint Presentations.*  With the Court's permission, the government intends to present its audio-visual and documentary evidence in electronic format using the Trial Director software. The government anticipates that Ms. McDonnell will operate Trial Director.  The government also intends to use PowerPoint presentations during its opening statements and closing argument, which will allow for a more organized presentation of the anticipated evidence and summation of the evidence in this case.

c.      *Witnesses*.  Several of the government's witnesses will need Korean interpreters.  The government will provide the clerk detailed information about which witnesses will require interpreters and when those witnesses will testify as the trial date approaches.  Additionally, several other witnesses are traveling from out of state to testify.  Depending on witness schedules and the progress of the trial, the government may request that certain witnesses be allowed to testify out of order.

d.      *Case Agent.*  The government requests that the Court designate FBI Special Agent Gregory Gerlach as case agent and that Special Agent Gerlach be permitted to sit in the courtroom (not at counsel table) during trial.

     e.     *Length of Trial*.  The government expects its case-in-chief to last 7-10 trial days, excluding jury selection and assuming a 9:00 am to 1:00 pm trial day.

<div style="margin-left: 40%;">

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

</div>

Dated:  November 9, 2023               */s/ Patrick Callahan*
                                       ELYSA Q. WAN
                                       PATRICK M. CALLAHAN
                                       Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Patrick M. Callahan*
Patrick M. Callahan
Assistant United States Attorney

Dated: November 9, 2023